UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RAFFAELENE IORIO,

               Plaintiff,

        - against -

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
------------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-5898 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Raffaelene Iorio brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the decision made by the Commissioner of the Social Security Administration ("SSA") denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). Before the Court are the parties' cross-motions for judgment on the pleadings. (Dkts. 14, 19.) Plaintiff seeks reversal of the Commissioner's decision, or, alternatively, remand for further administrative proceedings. The Commissioner asks the Court to affirm the denial of Plaintiff's claim. For the reasons that follow, the Court grants Plaintiff's cross-motion and denies the Commissioner's motion. This case is remanded for further administrative proceedings consistent with this Memorandum and Order.

## BACKGROUND

### I. Procedural History

On September 3, 2015, Plaintiff filed an application for DIB, alleging disability beginning on January 1, 2013. (Administrative Transcript ("Tr."),[1] Dkt. 12, at 12.) On February 19, 2016,

---

[1] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript (appearing in the lower right corner of each page) and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

Plaintiff's application was initially denied. (*Id.* at 12, 79–84.) Plaintiff then filed a request for a hearing before an administrative law judge ("ALJ"). (*Id.* at 12, 85–86.) On March 6, 2018, Plaintiff appeared with counsel before ALJ Jack Russak. (*Id.* at 12, 41–68.) In a decision dated May 16, 2018, the ALJ determined that Plaintiff was not disabled under the Act and was not eligible for DIB. (*Id.* at 9–27.) On August 28, 2018, the ALJ's decision became final when the Appeals Council of the SSA's Office of Disability Adjudication and Review denied Plaintiff's request for review of the decision. (*Id.* at 1–6.) Thereafter, Plaintiff timely[2] commenced this action. (*See generally* Complaint ("Compl."), Dkt. 1.)

## II. The ALJ Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe" impairment.

---

[2] According to Title 42, United States Code, Section 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on September 2, 2018, and Plaintiff filed the instant action on October 18, 2018—46 days later. (*See generally* Compl., Dkt. 1.)

20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the impairment is not severe, then the claimant is not disabled.

In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity "during the period from her alleged onset date of January 1, 2013, through her date last insured of June 30, 2016," and that Plaintiff suffered from the following severe impairments: "hypertension, asthma, obstructive sleep apnea, right ankle osteophyte,[3] lumbar myalgia/myositis,[4] lumbar radiculopathy,[5] insomnia, depressive disorder, anxiety, and polysubstance dependency in remission." (Tr. at 14.) Having determined that Plaintiff satisfied her burden at the first two steps, the ALJ progressed to the third step and determined that Plaintiff's severe impairments did not meet or medically equal the severity of one of the impairments listed in the Act's regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526) (the "Listings"). (*Id.* at 14–17.)

Moving to the fourth step, the ALJ found that Plaintiff maintained the residual functional capacity ("RFC")[6] to perform:

---

[3] An osteophyte is a "bony outgrowth or protuberance." *Osteophyte, Stedman's Medical Dictionary* 638450.

[4] Myalgia is "muscular pain." *Myalgia, Stedman's Medical Dictionary* 581020. Myositis is "inflammation of a muscle." *Myositis, Stedman's Medical Dictionary* 585650.

[5] Radiculopathy is a "disorder of the spinal nerve roots." *Radiculopathy, Stedman's Medical Dictionary* 748650.

[6] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

3

medium work as defined in 20 CFR 404.1567(c)[7] except she: can never operate foot controls with the right lower extremity; never climb ladders, ropes or scaffolds; never crawl; no exposure to moving machinery, unprotected heights or driving vehicles; must avoid concentrated exposure to: extreme heat or cold, wetness or humidity, irritants such as fumes, odors, dust and gases, poorly ventilated areas and exposure to chemicals; limited to work requiring simple, routine task[s]; work in a low stress job, as defined as having: only occasional decision making and only occasional changes in the work setting; work with occasional judgment required on the job; and only occasional interaction with the public, co-workers or supervision.

(*Id.* at 17.) Relying on this RFC determination, the ALJ found that Plaintiff was not capable of performing her past work as a "Sales Person-General Merchandise ([Dictionary of Occupational Titles ("DOT")]: 279.357-054) which is described as light, semi-skilled work with a[] [Specific Vocational Preparation ("SVP")] of 3." (*Id.* at 20.)

The ALJ then proceeded to step five, at which the ALJ must determine whether the claimant—given her RFC, age, education, and work experience—has the capacity to perform other substantial gainful work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(v). In this case, the ALJ consulted a vocational expert and determined that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed," such as

- Laundry Worker (DOT: 361.684-014) which is described as medium, unskilled work with an SVP of 2. There are 55,000 jobs in the national economy.
- Scrap Sorter (DOT: 509.686-018) which is described as medium, unskilled work with an SVP of 2. There are 15,000 jobs in the national economy.
- Furniture Cleaner (DOT: 709.687-014) which is described as medium, unskilled work with an SVP of 2. There are 20,000 jobs in the national economy.

(*Id.* at 21.) The ALJ concluded that Plaintiff was not disabled under the Act. (*Id.* at 22.)

---

[7] According to the applicable regulation,

[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 404.1567(c).

4

**STANDARD OF REVIEW**

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. *See* 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (internal quotation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation and alterations omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation omitted). Ultimately, the Court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). However, if there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. *See* 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013).

**DISCUSSION**

Plaintiff argues that the ALJ's decision was not supported by substantial evidence and that the ALJ did not apply the relevant legal standards. (*See* Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings ("Pl.'s Mot."), Dkt. 19-1, at 7.) Specifically, Plaintiff argues that the ALJ (1) erred in his RFC determination by improperly substituting his own medical opinion for that of a physician with regard to Plaintiff's physical impairments[8] (*id.*

---

[8] To this end, Plaintiff also notes that the ALJ incorrectly categorized Plaintiff's age category because, under the applicable regulations, she was already at an "advanced age" on her

5

at 10–11); (2) failed to develop the record (*id.* at 12); (3) improperly ignored the opinion of Plaintiff's treating psychiatrist (*id.* at 13–14); and (4) improperly evaluated Plaintiff's self-reports of limited functionality (*id.* at 15). The Court agrees with Plaintiff as to the ALJ's improper substitution of his medical opinion in making the RFC determination, as well as the ALJ's improper evaluation of Plaintiff's self-reported limited functionality, and remands on these bases with instructions to develop the record as necessary.[9]

I. **Plaintiff's Physical Impairments**

    A. **Medical Evidence**

The record includes treatment notes from Matthew R. Kohler, M.D., and Jonathann Kuo, M.D., Plaintiff's treating physicians at Hudson Spine and Pain Medicine from December 8, 2016 to January 23, 2018.[10] (Tr., at 470–510.) At her initial consultation with Dr. Kohler on December

---

date last insured (Pl.'s Mot., Dkt. 19-1, at 10), whereas the ALJ found that Plaintiff was "born on May 26, 1959 and was 57 years old, which is defined as an individual closely approaching advanced age, on the date last insured" (Tr. at 20). The Court agrees that the ALJ's assessment was incorrect, for the applicable regulations define "advanced age" as "age 55 or older." 20 C.F.R. § 404.1563(e). Thus, because Plaintiff was 57 years of age on her date last insured of June 30, 2016, she was already of an "advanced age." *See id.*

However, to the extent Plaintiff argues that her age and diminutive stature alone should weigh against the ALJ's RFC determination that Plaintiff is capable of performing "medium work" (Pl.'s Mot., Dkt. 19-1, at 11–12), such arguments are unavailing. The ALJ's error with respect to Plaintiff's age category was not material to the ALJ's RFC determination. Under the applicable regulation, an RFC determination is based only on "functional limitations and restrictions that result from [a claimant's] medically determinable impairment or combination of impairments." SSR 96-8P(2), 1996 WL 374184, at *1 (July 2, 1996). As such, "limitations caused by other factors, such as age and natural body build, are irrelevant to a claimant's RFC." *Vanderhorst v. Berryhill*, No. 17-CV-10205 (WHP) (DF), 2019 WL 3416003, at *16 n.29 (S.D.N.Y. June 25, 2019) (citing SSR 96-8P(2)).

[9] Because remand is warranted on these bases, the Court does not address Plaintiff's remaining arguments pertaining to her treating psychiatrist's opinion.

[10] As discussed briefly at the March 6, 2018 ALJ hearing, an ALJ need not consider treatment records dated after a plaintiff's last-insured date. (Tr., at 47.) However, the Court finds these records should have been considered because they are relevant to the condition of Plaintiff's

8, 2016, Plaintiff described a four-to-five-year history of right ankle pain following a sprain, with ongoing throbbing, shooting, and stiffness despite physical therapy. (*Id.* at 471.) She reported that the pain radiated into her right foot at a pain level of 10/10. (*Id.*) Plaintiff had received five or six right ankle cortisone injections "over the past year," most recently in April 2016, and was also using an ankle brace, taking pain medication,[11] and relying on physical therapy to treat her ankle. (*Id.* at 471–72.) Plaintiff reported that these treatments had failed to provide relief. (*Id.*) Dr. Kohler noted that Plaintiff had received an X-ray/MRI of her right ankle with Dr. Hilary Alpert and Dr. Cary Chapman. (*Id.*) Dr. Kohler diagnosed Plaintiff with "enthesopathy[12] of ankle," administered an ankle joint injection, and started Plaintiff on trials of Celebrex and Voltaren. (*Id.* at 472.) Dr. Kohler further noted that he and Plaintiff "discussed in depth the importance of physical therapy, exercise, injury prevention, and avoidance of heavy lifting and repetitive movement." (*Id.*)

On April 25, 2017, Plaintiff saw Dr. Kuo and complained of right ankle pain and lower back pain that she described as "achy, throbbing and sha[rp] in nature." (*Id.* at 473.) Dr. Kuo opined that "[Plaintiff] needs surgery but is not in a position to get surgery right now. Patient has

---

ankle before her date last insured. *See, e.g., Flanigan v. Colvin*, 21 F. Supp. 3d 285, 303–04 (S.D.N.Y. 2014) (noting that medical opinions after the date last insured are only taken into consideration if they are relevant to a claimant's condition prior to that date); *Dailey v. Barnhart*, 277 F. Supp. 2d 226, 233 n.14 (W.D.N.Y. 2003) (same). Here, the records clearly address Plaintiff's right-ankle pain and related treatments predating June 30, 2016, the date on which Plaintiff was last insured.

[11] At the time of her initial consultation, Plaintiff was taking the pain medications Percocets/Oxycodone, naproxen, and mobic. (Tr., at 471.)

[12] Enthesopathy is a "disease process occurring at the site of insertion of muscle tendons and ligaments into bones or joint capsules." *Enthesopathy, Stedman's Medical Dictionary* 294790.

tried conservative therapies in the past including 3 months of PT and NSAIDS[13] which has not provided optimal pain relief." (*Id.*) On May 23, 2017, Plaintiff presented with "ongoing right ankle pain" and stated that it was "not the appropriate time for [surgery] due to personal reasons," and sought to continue medication for her pain management. (*Id.* at 475.) On June 22, 2017, Plaintiff indicated an interest in undergoing surgery (*id.* at 477), and Dr. Kuo noted that Plaintiff "will have surgery done with Dr. Chapman" (*id.* at 478). Dr. Kuo also administered a joint injection to Plaintiff's right ankle. (*Id.*) On July 20, 2017, Plaintiff reported 75% improvement in her pain level following the injection, but pain returned after a week. (*Id.* at 480.) Plaintiff also stated that she wished to postpone surgery until after her mother underwent needed surgery. (*Id.*) On August 9, 2017, Plaintiff reported pain at 7/10 and described it as "continu[ing] to interfere with walking and activities of daily living." (*Id.* at 483.) On September 6, 2017, Plaintiff's condition was largely unchanged, and she reported that her pain was worse "with standing or walking[ f]or prolonged periods of time." (*Id.* at 486.) Plaintiff's symptoms were unchanged on October 5 (*id.* at 489) and November 2, 2017 (*id.* at 492). Plaintiff reported worsened pain on November 30, 2017, describing her ankle as "achy, sore, stiff, and tight." (*Id.* at 494.)

As the ALJ also noted, in addition to her right ankle osteophyte and lumbar radiculopathy, Plaintiff had a history of myalgia and myositis (*id.* at 18) as well as hypertension, asthma, and obstructive sleep apnea (*id.* at 19). Plaintiff was treated at Staten Island University Hospital in January 2015 due to shortness of breath, wheezing, and coughing (*id.* at 372–94), for which she was administered prednisone (*id.* at 392). The results of a 2016 sleep study showed that Plaintiff

---

[13] NSAIDs are nonsteroidal antiinflammatory drugs. *Nonsteroidal anti-inflammatory drugs (NSAIDs)*, Stedman's Medical Dictionary 267230.

experienced mild obstructive sleep apnea, for which conservative measures were recommended. (*Id.* at 457–68.)

### B. Plaintiff's Self-Reported Functionality

At the March 6, 2018 ALJ hearing, Plaintiff testified about the extent of her physical impairments. Plaintiff described having "problems with the stairs" due to the multiple fractures in her right ankle. (*Id.* at 52.) Plaintiff stated that she was seeing Dr. Kohler monthly for ankle treatment. (*Id.* at 52–53.) Plaintiff noted that she had purchased a cane at her doctor's recommendation. (*Id.* at 53.) Plaintiff reported travelling one mile in the car to attend church with her sister. (*Id.* at 54.) Plaintiff stated that she could only walk two city blocks at a time, that she could only stand for ten or twenty minutes at a time, and that she did little housework—"[j]ust on the floor that I'm staying on. I can't really go up and down [the stairs]." (*Id.* at 59–60.) Plaintiff also reported that she has problems sitting for prolonged periods, and that she "can't sit still" and must "move around a lot." (*Id.* at 59.)

### C. Consultative Examination

In a December 26, 2015 report, internal medicine consultative examiner ("CE") Chitoor Govindaraj, M.D. (*id.* at 19), noted Plaintiff's past history of, *inter alia*, ankle pain (*id.* at 352) and right "ankle surgery fusion" (*id.* at 353). CE Govindaraj observed that Plaintiff's "right ankle dorsiflexion [was] decreased" and that Plaintiff was "walk[ing] with her weight bearing on her right ankle." (*Id.* at 354.) CE Govindaraj opined that Plaintiff did "not need any cane or any ambulatory devices, not recommended by her treating doctors"[14] and added that Plaintiff had no

---

[14] It is unclear whether this statement by CE Govindaraj means that he thought Plaintiff did not need a cane or ambulatory device and that her treating physicians had not recommended one, or that he thought Plaintiff did not need a cane or device that was not recommended by her treating physicians.

9

restrictions in standing, walking, or sitting. (*Id.*) CE Govindaraj concluded that Plaintiff's "[o]verall medical prognosis is good" (*id.*) and that Plaintiff had no exertional limitations (*id.* at 19, 354). The ALJ assigned CE Govindaraj's opinion "little weight" because CE Govindaraj is not a treating physician, did not review Plaintiff's medical record, and arrived at physical exam findings that were "inconsistent with all diagnostic testing and physical examination findings by various treating physicians." (*Id.* at 19.)

## II. Medical Findings As to Plaintiff's Physical Impairments

With respect to her physical impairments, Plaintiff argues that, "the record is devoid of any medical opinion supportive of the ALJ's conclusion that the plaintiff can meet the exertional demands of medium work." (Pl.'s Mot., Dkt. 19-1, at 11.) The Court agrees.

The record contains a number of treatment notes but lacks a medical opinion that speaks specifically to Plaintiff's physical functionality. While such an opinion is not necessarily required to support an RFC finding, *see, e.g.*, *Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019) (summary order) (affirming RFC determination that relied on medical findings in the treatment notes, despite the lack of a medical opinion expressly speaking to plaintiff's ability to undertake sedentary work), "an ALJ is not a doctor, and therefore is not equipped to make medical judgments," *Indelicato v. Colvin*, No. 13-CV-4553 (JG), 2014 WL 674395, at *3 (E.D.N.Y. Feb. 21, 2015). Thus, it is not "appropriate for an ALJ to substitute his own opinion for the findings of medical sources on the record." *Beckers v. Colvin*, 38 F. Supp. 3d 362, 374–75 (W.D.N.Y. 2014) (citation omitted)); *see also Dye v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 386, 391 (W.D.N.Y. 2019) ("[A]n ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." (internal quotation and citation omitted)).

Here, after the ALJ effectively rejected CE Govindaraj's assessment of Plaintiff's physical functionality, the record lacked a medical opinion that specifically addressed this issue. The ALJ then made his own RFC determination, finding that Plaintiff could perform medium work, even though the medical treatment notes from Drs. Kohler and Kuo[15] contained ample evidence to the contrary. This was error. Dr. Kohler noted that Plaintiff had ongoing ankle pain due to a sprain that occurred four or five years prior. (Tr., at 471.) Plaintiff had received five to six cortisone injections in her right ankle over a one-year period prior to December 8, 2016, with the most recent injection in April 2016.[16] (*Id.*) Both physicians continued to treat Plaintiff's ankle with injections and a variety of pain medications (*see generally id.* at 472–95), but Plaintiff's pain was, at best, only temporarily relieved by this treatment regimen (*see, e.g., id.* at 480). Plaintiff ultimately expressed an interest in surgery because the pain management medications were not adequate to relieve her pain. (*Id.* at 477–78.) Throughout Plaintiff's treatment, both doctors advised Plaintiff to avoid "heavy lifting and repetitive movement." (*Id.* at 472, 474, 476, 478, 481, 485, 487, 490, 493, 495.) In contrast, the ALJ's RFC determination of "medium work" requires lifting up to 50 pounds at a time with frequent lifting or carrying of up to 25 pounds. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c).

---

[15] Even though Drs. Kohler and Kuo were Plaintiff's treating orthopedic specialists, the Court does not apply the treating physician rule, as neither Dr. Kohler nor Dr. Kuo has provided an *opinion* that specifically addresses "the nature and severity of [Plaintiff's] impairments." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotations, alterations, and citations omitted). In other words, the Court does not find that there was a treating physician opinion about Plaintiff's impairments that the ALJ failed to weigh. *Cf. Tirado v. Astrue*, No. 10-CV-2482 (ARR), 2012 WL 259914, at *4 (E.D.N.Y. Jan. 25, 2012) (noting that the treating physician rule requires giving "controlling weight to a treating physician's opinion as to the nature and severity of an alleged impairment"). Nonetheless, as discussed *infra*, the medical findings and records of Drs. Kohler and Kuo are relevant to the lack of evidentiary support for the ALJ's RFC determination.

[16] As discussed *supra*, this date range falls before Plaintiff's date last insured.

Despite noting Plaintiff's "right ankle osteophyte and lumbar spine impairments, which cause her trouble in walking, standing and sitting," the ALJ concluded that "the record supports limiting [Plaintiff] to medium work as eroded by the aforementioned postural, environmental, and manipulative limitations." (Tr., at 20.) The applicable regulations note that someone who can do medium work "can also do sedentary and light work." 20 C.F.R. § 416.967(c). Light work, in turn, either "requires a good deal of walking or standing" or "involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b). Yet, Plaintiff informed her treating orthopedic specialists, Drs. Kohler and Kuo, that her "pain continues to interfere with walking and activities of daily living" (Tr., at 483), and that her pain became worse "with standing or walking[ f]or prolonged periods of time" (*id.* at 486). Thus, despite acknowledging Plaintiff's difficulty walking, standing, and sitting, the ALJ reached an RFC determination that could require Plaintiff to perform these activities to an extent that she was unable. Similarly, despite Plaintiff's treating physicians' warning to Plaintiff against heavy lifting, the ALJ determined, seemingly on his own, that Plaintiff could lift up to 50 pounds at a time and could frequently lift or carry objects weighing up to 25 pounds.[17] *See* 20 C.F.R. § 404.1567(c) (defining medium work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.").

---

[17] Of note, where a claimant is of advanced age, the disability determination is made using "the Grids" in Part 404, Subpart P, Appendix 2, which dictate that a claimant of advanced age who is only capable of light work is deemed disabled. *See* 20 C.F.R. pt. 404, subpt. P, app. 2. In at least one case, a reviewing court has observed that "finding a medium-work level [for an advance-age claimant] was an expedient to deny a disability claim." *Cahill v. Colvin*, No. 12-CV-9445 (PAE) (MHD), 2014 WL 7392895, at *29 (S.D.N.Y. Dec. 29, 2014) (discussing *Calzada v. Astrue*, 753 F. Supp. 2d 250 (S.D.N.Y. 2010)); *see also Calzada*, 753 F. Supp. 2d at 281 ("[T]he ALJ's unexplained and quite possibly unjustified finding of a medium-level work capability appears to have been necessary for a denial of benefits to plaintiff. This only underscores the importance of ensuring a complete record and an adequate explanation for the ALJ's reasoning[.]").

Furthermore, Plaintiff's self-report of limited daily functionality is consistent with her treating physicians' medical findings and recommendations. Particularly relevant was Plaintiff's testimony that she was only able to walk two city blocks at a time, that she could only stand for ten or twenty minutes at a time, and that she did little housework—"[j]ust on the floor that I'm staying on. I can't really go up and down [the stairs]." (*Id.* at 59–60.) This testimony bolsters the medical records, which indicate that Plaintiff's right ankle pain posed a physical limitation barring an RFC determination that she was capable of "medium work." To the extent the ALJ found Plaintiff's activities indicative of her ability to perform medium work, it is "well-settled law in this Circuit that such activity does not, in itself, contradict a claim of disability, 'as people should not be penalized for enduring the pain of their disability in order to care for themselves.'" *Citro v. Colvin*, No. 16-CV-6564 (BCM), 2018 WL 1582443, at *14 (S.D.N.Y. Mar. 28, 2018) (quoting *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000)).

Because the ALJ's RFC determination was largely unsupported by specific evidence in the record, the Court finds that the ALJ improperly substituted his own opinion for the findings of Plaintiff's medical sources. *See, e.g.*, *Henningsen v. Comm'r of Soc. Sec. Admin.*, 111 F. Supp. 3d 250, 271 (E.D.N.Y. 2015) ("[D]espite the lack of any medical opinion in the record indicating [plaintiff's RFC], and contrary to the opinions of plaintiff's treating physicians, the ALJ made an RFC determination in the absence of supporting expert medical opinion and improperly substituted his own lay opinion for the opinion of a physician." (internal quotation, alterations, and citation omitted)); *Tricic v. Astrue*, No. 07-CV-997 (NAM) (GHL), 2010 WL 3338697, at *3–4 (N.D.N.Y. Aug. 24, 2010) (finding that ALJ's RFC determination was not supported by substantial evidence where two treating doctors opined to the contrary, and no examining physician provided a specific opinion as to plaintiff's RFC); *Walker v. Astrue*, No. 08-CV-828 (RJA) (JJM), 2010 WL 2629832,

at *6 (W.D.N.Y. June 11, 2010) ("[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings[.]"), *report and recommendation adopted*, 2010 WL 2629821 (W.D.N.Y. June 28, 2010).

Accordingly, this case is remanded for further administrative proceedings. Insofar as Plaintiff argues that the ALJ should have further developed the record by re-contacting CE Govindaraj, ordering a new consultative medical examination, or requesting a functional assessment from Plaintiff's treating physicians (Pl.'s Mot., Dkt. 19-1, at 12), the Court agrees that, on remand, the ALJ must develop the record by taking one or more of these steps. "Unlike a judge at trial, the ALJ has a duty to 'investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 n.1 (2d Cir. 2013) (summary order) (quoting *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011)); *see also Nusraty v. Colvin*, 213 F. Supp. 3d 425, 442 (E.D.N.Y. 2016) (finding that, under his "affirmative duty" to develop the record, the ALJ "should have followed up with [the treating physicians] to request supporting documentation or to obtain additional explanations for [their] findings").

Specifically, the ALJ should request a functional assessment from either one of Drs. Kohler and Kuo so that the record contains a treating physician's medical opinion as to Plaintiff's physical functionality. *See Stellmaszyk v. Berryhill*, No. 16-CV-9609 (DF), 2018 WL 4997515, at *24 (S.D.N.Y. Sept. 28, 2018) (noting that the lack of a function-by-function assessment by a treating physician can be a basis for remand if the record is not sufficiently comprehensive). If the ALJ determines that Drs. Kohler and Kuo cannot accurately attest to Plaintiff's functionality at the time of her last-insured date, the ALJ should also more fully develop the medical record with respect to past treatment of Plaintiff's right ankle. For example, the ALJ might ask for the X-ray/MRI of

Plaintiff's right ankle that she received from Dr. Hilary Alpert and Dr. Cary Chapman (Tr., at 471), as mentioned by Dr. Kohler. *See, e.g.*, *Burgess*, 537 F.3d at 132 (noting that "the ALJ, given his duty to develop the record, should have requested that the MRI Report [relied upon by one of the plaintiff's treating physicians] be supplied"). The ALJ might also solicit records from either of Drs. Alpert or Chapman. Alternatively, the ALJ might also request an assessment from another consultative examiner.

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's cross-motion for judgment on the pleadings and denies the Commissioner's motion. The Commissioner's decision is remanded for further consideration consistent with this Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 30, 2020
Brooklyn, New York